calendar. Our first case is Emily Pierce v. Fordham. Are we ready to proceed? Good morning. May it please the Court, my name is Andrea Rizzoli. I represent Plaintiff Emily Pierce. Your Honors, this is an appeal from the District Court, a motion to dismiss by the defendants, two defendants, Fordham University and the Office of Civil Rights. We'll call them the government defendants. It's an appeal taken from a 12B6 motion to dismiss. It is our position that the appeal was erroneously decided on a heightened standard of scrutiny, and that at this stage of the proceedings, the standard is the plausibility standard set out in Tomley, and that Ms. Pierce was ... Could I ask you first about the Office of Civil Rights? Is there anything left as to that defendant? It's been decided, the appeal's been rejected. Is that claim gone? No, it's not, Your Honor. Okay. Well, there's a couple of reasons. The Office of Civil Rights had made a determination two and a half years later during the pendency of the motion to dismiss. It's our position, and also the determination was made by one of the named defendants. It's our position that that is derelict in their duty, and that they abused their discretion in not enforcing what they were set out to enforce. That wasn't your contention before Judge Furman. You said all you wanted was a determination from the government, and you got it. Why is there anything left? That is true, but it was a determination made during the litigation process by a named defendant, which is a conflict of interest. It wasn't a subjective review. Part of we had submitted, which we didn't have at the time, a FOIA request, which shows that the government defendant used the court documents to make the determination when they were supposed to do an objective investigation back in 2013. Being untimely made it the actual information that the government used was not a proper investigation that was conducted by OCR against the Fordham defendants. Did you make that claim to Judge Furman? I didn't. Yes, we did say that they've been derelict in their duty. It wasn't timely and we wanted a proper determination, not just any determination. Any determination just because in anticipation of this litigation, it was not proper. If we had a timely decision back in 2013, then the government's defendants wouldn't even be here. The very reasons for including them was about having an untimely resolution to this matter after it was over and over and over again. We were promised one. There's many communications, and I did make this argument in the papers, submission to Judge Furman. Also, then after the fact, after the litigation began, then OCR made a determination, of course, unfavorable against my client and because of the litigation process. It's our contention that it's not an objective determination. It's subjective. It's in retaliation. It's for this exact pending lawsuit and that we would contend that I'm not asking for- What's your evidence that the civil rights determination, Office of Civil Rights determination was in retaliation for your situation with Fordham? Why would they retaliate against you? I think they retaliated because they were named in this lawsuit. Then just to throw in a determination to get out of the lawsuit, it's not proper. That's what you asked for. You asked for a determination and you got a determination. That seems like the end of the story. Respectfully, it's not the end of the story when they have not made a proper determination and it's by one of the defendants in the lawsuit. That's derelict in the enforcement duties that they were set out to do and conduct under the ADA, under their own delegation. Let me ask you about the Fordham situation because you only got a little time left. Okay, sorry. Other than the shorthand written note from Dr. Mencher, were there any records provided to Fordham from her psychiatrist? Not at the time, Your Honor, because then this whole colloquy of what information she was supposed to provide. It was excessive medical ... They wanted all her records. It was broad. Didn't you sort of attach all of her records to your motion? No, I did not. That was in the motion to dismiss. There were two leaves of absence. There were one that was 2012 and one that was 2013. It was our contention that she was treated differently. Who was she treated differently then? That's what I'm not clear about. Okay, well, she was treated differently. That's one of our arguments. From whom? From Fordham. No, no. Which student was she treated differently then who's similarly situated to her? You seem like they filled out the paperwork. They did not submit extensive medical ... At this juncture, we didn't get to discovery. As far as I understand it, at this juncture, they were not required to submit excessive and overbroad medical and psychiatric information. But you agree that the school's entitled to require a student to participate in a re-entry process, don't you? If that is the school's policy, but it depends on how the school implements that policy. When the school implements a policy in a discriminatory manner, then no, I don't agree. But yes, the other information that has come to light during this process is that Ms. Pierce never notified Fordham that she was hospitalized. How they knew she was hospitalized and started asking for ... All she did was take a leave, whether it was for medical, family, psychiatric. At this point, again, at this juncture, I don't have the Fordham records, but it's suspect on how they even knew she was hospitalized in a psychiatric institution to begin with. Ms. Rizzoli, you've reserved a few minutes for rebuttal. Would you like to use them now or would you rather ... No, I'll wait. Thank you. Mr. Harrington? Well, hold on. Let me just get all this. Good morning, Your Honors. Good morning. Let me address the issue of what was actually in the record below, and that is, as Your Honors are aware, there were two students referenced in support of her disparate treatment claim, which is the only claim that she's made, either in the Second Amendment complaint or in the arguments presented to Judge Furman. There were two students. The first student, it's not clear from the complaint whether or not the student suffered from a medical as opposed to a mental impairment, but what is clear is that that student was required to go through the reentry process. It's stated, I believe, it's on page 40 of the record, the section from the complaint that says the student was required to go through the reentry process. It may be page 21, but it's one of those two, Your Honor. The second student was identified as having schizophrenia. Presumably, that student is in the same class, protected class. In answer to your question, Judge Donnelly, there's no group that they're comparing this student to because she's actually in the same class that plaintiff claims to be in. Again, there's no indication as to the second student that the second student, who did go through several leaves of absences and returns to the school, was not required to go through the reentry process. She doesn't plead that there was a difference in the treatment as regards the reentry process for student number two. Actually, when you look at both student number one and student number two, neither one of them suggest, let alone plead, that there was disparate treatment where the plaintiff appellant was treated less favorably than persons in the other group. Putting that aside, there are a number of other aspects in which this claim really fails to fulfill the requirements of . . . I just ask you, I thought I heard you say this is the only claim, but there was a retaliation claim before Judge Ferman. The retaliation claim really fails most fundamentally on a timeline basis. The only protected activity which the district court found in the complaint was the filing of a complaint, I believe, with the Office of Civil Rights, the Department of Education. That occurred in June 2013, June 12, 2013. The two prior incidents involving the plaintiff appellant are, first of all, was in March, April of 2012. That was the first incident in which she claims that she had to withdraw from the school and was subsequently readmitted. The second incident occurred in April of 2013, at least two full months prior to her filing the complaint. The appellant does not allege below in the complaint or in the district court that she informed Fordham that she was going to be filing this complaint. There's no basis upon which she can claim that there was retaliation because there was no information allegedly provided to Fordham either by the filing of the complaint itself or by a statement saying, I'm about to file a complaint against you and them taking some retaliatory action that's proximate in time. The only other possible fact in the record was she says that she raised a HIPAA issue with the school in December of 2012 in conversation with some person at Fordham. No facts were pleaded to suggest that the person who that information was provided to had anything to do with the decisions later. The decision that came after December 2012 was four months later when she was required to go through the reentry process. Courts have found that a delay of four months really lacks the temporal proximity in time which can lead to an inference of potential discriminatory treatment. There's really no facts pled as to that earlier. The court was searching the record to try to find something and Judge Furman identified that and found that it was inadequate. Did she complete the reentry process for the first leave? She alleges that the reentry process was different because it didn't involve her having to produce medical records. She voluntarily produced medical records as part of the appeal which is rather odd because she seems to obviously value privacy and included those records. But most importantly, she doesn't allege that she provided those records to Fordham. The court needs to know she also doesn't say in the complaint that in that earlier situation where she started missing classes and ultimately had to withdraw from classes at Fordham that she ever notified the school that she was doing so on the basis of medical necessity. In fact, I heard Ms. Rizzoli argue, at least in dealing with the second event, that she never told the school that she had a mental problem. She never, which is really interesting because it flies in the face of the requirements of pleading an ADA claim. As you're required as a plaintiff to plead that you are suffering from a disability which affects a major life function. And she doesn't plead that in this case, nor does she say that she ever told that to Fordham. In fact, she says somehow they found out about it. But she doesn't plead it, so she really doesn't fall within the class. She also doesn't say that she told Fordham about it, which is the second element of an ADA or Rehabilitation Act claim. You have to, the institution has to know about your disability. What was in those, I know there's a series of emails back and forth. Yes. Between the appellant and a couple of different people at Fordham. Yes. This remind me what the subject of those was. Well, in the pleading, in the first instance, the emails involved Ms. Pierce communicating about her, she had personal issues back in 2012, and emotional issues, and also eviction issues, and was losing her housing. She claims that she communicated with this professor, Vincenza Corcoran, in the complaint, and so- The ones that I was thinking about were the ones that were, I don't know if it was with the dean, in the 2013. Right. As far as I understand it, the 2012, I'm a little unclear about why it's even in here, because it does not seem to be the source of the complaint, but what are the 2013 communications? She says, in no uncertain terms, I'm not providing you with the forms. I'm not providing you with the medical records. I'm basically then demanding that you let me in with no disclosure of my medical condition beyond the note from Dr. Melcher, which really provides no meaningful information, simply the dates on which she was hospitalized and the fact that he has seen her some one week after her discharge. He assiduously does not give any information about her diagnosis, her prognosis, her safety, either to herself or to others, or any information from which Fordham could have gleaned the necessary information to make a determination that it was safe for her to return to the school. She claims that she said, well, you can call the doctor. Yeah, but that's belied by, well, there's nothing in the record to suggest that, and these emails directly contradict that, because she says I'm not giving you any additional information, and she demands to be allowed to come back to the school. After that note was written, she considered that to be enough information for the school, and they should take it or leave it. But importantly, she references that when there was communication between the hospital, Columbia Presbyterian, I believe it was, and Dr. Melcher. Dr. Melcher refused to speak to the hospital and provide information because she had not signed a HIPAA release form, and releasing him to speak to the hospital. And therefore, her statement that she would have authorized him to speak to Fordham is undermined by her clear refusal to sign the consent forms and release the medical records or the medical information. Or to permit him to fill out the community provider form in the first place, which were essentially directed at trying to get the information your honor's referring to. She wouldn't allow her doctors to provide that information either in written form or to release them to speak to Fordham, which requires obviously a signed release form in order for that to be accomplished. I believe that's all the time I have. Thank you, Mr. Harrington. Thank you. And Ms. Poscoblo, is that how I'm going to say your name correctly? May it please the court, Christine Poscoblo, US Attorney's Office on behalf of the government defendants. The issues on appeal concerning the government defendants are really very narrow. A plaintiff sued OCR and two of its attorneys in order to compel them to complete their investigation and issue a determination on her administrative complaint against Fordham. And they have now provided that determination. Once they did so, there was no longer a case or controversy before the district court and the claims were properly dismissed as moot. The fact that plaintiff is not happy with OCR's determination cannot revive these now moot claims. Setting aside for a moment that plaintiff's allegations that the determination was somehow retaliatory are wholly conclusory. OCR's determination is not subject to judicial review in any event. Why did it take so long for the determination? Well, the details of the investigation and the determination are not in the record, because the government's arguments did not turn on what actually happened below. But just to put the investigation in context, OCR received the complaint in June, 2013. Reached out to plaintiff to gather more information about her allegations. And in July of 2013, sent plaintiff a letter informing her that OCR had accepted two of her three allegations for investigation. In August of 2013, OCR conducted a mediation between Fordham and the plaintiff that did not result in a settlement. But thereafter, OCR promptly began its investigation. Interviewing the plaintiff, her attorney, numerous employees from Fordham. Reviewing multiple pages of documents from both Fordham and OCR. Ultimately culminating in a lengthy and detailed letter of finding or determination on her allegations in March of 2016. So other than OCR taking its time to review the documents and conduct the interviews and write a lengthy decision. So is there anything I can do about the two years it took to do it? No, there's nothing. There's no- How do we know that? There's nothing that's been submitted in the record about that issue or presented to the district court on that issue because at the end of the day, OCR's processing of plaintiff's administrative complaint is not subject to judicial review. As this court recognized in Marlow, the section 504 of the Rehabilitation Act does not provide a private right of action against the government in connection with its handling of a complaint. And judicial review is not available under the APA because plaintiff has another adequate remedy, which is her lawsuit directly against Fordham. And the court in Marlow also recognized that there's nothing in the statutes or guidelines regarding how OCR is to handle complaints that would give a court any law to apply in determining whether or not there was some violation of the APA in the handling of the complaint. So the district court did not have the evidence and it's not in the record as far as the details of why it took so long or whether this was something that was unusual. But even if the court were to entertain an argument that the investigation was somehow unreasonably delayed, the only relief plaintiff would then be entitled to would be a remand to the agency to complete its investigation and issue a determination, which it has now done. So really, there is nothing before the court left to decide on plaintiff's claims against the government. And unless the court has any other questions, the government will rest on the arguments presented today and in its briefs. Thank you. Thank you, Your Honor. And Ms. Rizzoli, you have some time left. Okay, I just want to address a couple of issues that were argued by Fordham. The two students that were named, and we named them one and two, not to reveal their names because we don't have permission at this moment. One, I believe, was a medical leave and the other was psychiatric. When- Isn't the person assuming it was a psychiatric leave is in exactly the same position as your client? She's in, she is in exactly the same position, however- She got back in, she got in, right? She got back in, Your Honor, but she wasn't, as far as I understand it, she wasn't required to submit voluminous, excessive, overboard medical information. That's a question that I have for you. Why wouldn't she fill out this form? Okay, because- Because just from looking at the record, you supplied quite a bit of information in connection with your, in front of Judge Furman, including a blog where your client is talking about her medical history. So what's confusing to me is if she wants to get back into the school, why couldn't you just use all that information that you seem to be talking about everywhere else and fill out the form? Your Honor, that's information that my client chose to share. Getting psychiatric documents from a hospital is different. It goes way back to your childhood, because that's how they diagnose or whatever, without revealing. There's information there from her whole life. What she chose to put on social media or send in emails was specific, and limited to what she voluntarily waived. Presumably they ask everybody in her situation for the same thing, correct? That's not our position, no. In the medical leave, I know that just to go into that, all she had to do is re-register for classes. There was nothing submitted. You yourself say that the school has an interest in making sure that the student is ready to come back to school. And if the school needs to make special accommodations for the student. I mean, you seem to concede that those are legitimate goals. Those are legitimate goals when done with reasonableness. And the community provider form, I think that's the form you're speaking of, to waive your medical records, was our position. And so was Ms. Pierce's back when she was dealing administratively with the school, was that it was overbroad. She was willing to let them call the doctor. She was willing to try to limit the information enough to get her back into school. Even though she didn't agree with it, her goal was to get back into school. She wasn't doing this to just be obstinate and cause a problem. I mean, she has significant debt. She can't finish school because she actually has not been even officially withdrawn, which they were supposed to do. She has no documentation or was never received as far as we know. That she was dismissed in any way, it's just she wasn't allowed to re-answer. And so the procedure here is a little ambiguous as to, and you can see by the emails, it escalated. But she was trying to communicate with the dean, even though she does say I'm not going to give you all this information. And I'm not filling out the form. Okay, but there was never a discussion. She never had a meeting. It was, he never called her in. I mean, this is a vulnerable population. This is a person with psychiatric disabilities. There was no, it was like fill out the form or nothing. And that's not, in our position at the moment, is not how everyone else was treated. I mean, she was treated differently. It's not a consistent procedure. And as it went on and escalated, and about them knowing or not knowing about the OCR complaint. It's our position that they did know about the OCR complaint. Because OCR, the procedure is, has to notify the entity that you're complaining about. So they did know, and the four months temporal proximity, that's maybe too long or too short. This was all a continuum of a conduct and a continuum of a process. And she had to go administratively first.  Thank you, Ms. Rizzo. Okay. That's your argument anyway. Thank you. And we'll reserve decision on this case.